## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH PAUL ENGLEHARDT,<br>315 North Highland Street<br>Arlington, VA 22201<br><br>YVONNE DORA WADE<br>7014 Canyon Drive<br>Capitol Heights, MD 20743<br><br>    Plaintiffs,<br><br>   v.<br><br>UNITED STATES DEPARTMENT<br> OF JUSTICE<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001,<br><br>MERRICK B. GARLAND, *in his official*<br>*Capacity as Attorney General of the United*<br>*States of America*<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530-0001,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 24-cv-1865<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### NATURE OF THE ACTION

1. Plaintiffs Joseph Paul Englehardt and Yvonne Dora Wade bring this action against the United States Department of Justice and Attorney General Merrick Garland (collectively, "DOJ") under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiffs seek declaratory and injunctive relief against the DOJ for the unlawful withholding of funds from the United States Victims of State Sponsored Terrorism Fund (the "Victims Fund").

2.      Plaintiffs are victims of state-sponsored terrorism who were grievously injured abroad serving our country in military and civil service. Terrorist states have been targeting, injuring, and killing Americans for decades, ramping up significantly in the 1980s and 1990s with attacks on U.S. Embassies abroad. Terrorist states continue to injure or kill Americans through the present day.

3.      Like thousands of other victims, Plaintiffs spent decades pursuing justice and redress for the terrorist attacks that caused them so much harm, with little or no success. In 1996, however, Congress amended the Foreign Sovereign Immunities Act ("FSIA") specifically to allow U.S. victims of state-sponsored terrorism to seek justice against terrorist states by suing in U.S. courts.

4.      The terrorism exception to the FSIA, codified at 28 U.S.C. § 1605A, waives sovereign immunity for certain terrorist acts of any foreign state designated as a "State Sponsor of Terrorism" either at the time an attack sponsored by that foreign state occurred or as a result of the attack that is the subject of the litigation.

5.      Designation as a State Sponsor of Terrorism is applied to a foreign state whose government has repeatedly provided support for acts of international terrorism, as determined by the United States Department of State pursuant to section 1754(c) of the National Defense Authorization Act for Fiscal Year 2019, section 40 of the Arms Export Control Act, and section 620A of the Foreign Assistance Act.

6.      North Korea is currently designated a State Sponsor of Terrorism, as are Cuba, Iran, and Syria. Iraq, Libya, South Yemen, and Sudan were previously designated, but have had their designations rescinded.

7.      Unfortunately, while the terrorism exception allowed victims of state-sponsored terrorism to obtain judgments, it did not provide any means for plaintiffs to collect on their judgments. Thus, between 1996 and 2015, U.S. courts awarded billions of dollars in judgments against State Sponsors of Terrorism, but victims could not collect on those judgments because the defendants did not pay them and had few attachable assets in the U.S.

8.      In 2015, recognizing the needs of injured victims and the family members of injured and deceased victims, and the attendant difficulty with collecting judgments, Congress enacted, and the President signed, the United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144 (the "Victims Act"), which, as amended, established the Victims Fund, to be overseen by a Special Master appointed by the Attorney General of the United States.

9.      The Victims Act charges the Special Master with administering the Victims Fund, and requires DOJ to direct the proceeds of qualifying cases to be deposited into the Victims Fund.

10.      The Victims Act also requires the Special Master to distribute funds held in the Victims Fund to eligible victims. Since its inception, the Victims Fund has made only four distributions in nine years, when the original intent was for annual meaningful distributions. Distribution amounts are determined on a pro rata basis. This means that in each distribution, all eligible victims receive an amount calculated based on the same percentage of their respective judgments. The first distribution provided victims with 13.66% of their judgments. The most recent distribution provided victims 0.4%. Currently, no victim has received more than a quarter of his or her total judgment amount from the Victims Fund, and many have received nothing, including several of the Plaintiffs in the instant case.

11.      The Victims Fund is primarily capitalized with proceeds obtained by the United States—either through judgments or settlements—in criminal and civil matters "arising from"

specified statutes, or related conspiracies, schemes, or other offenses arising from "doing business with or acting on behalf of, a state sponsor of terrorism." 34 U.S.C. §20144(e)(2)(A)(i)&(ii). For the vast majority of victims, distributions from the Victims Fund are the only source of justice and recompense for their crippling and permanent terrorism-related injuries and losses.

12.     On an ad hoc basis, Congress has also appropriated other sources of funding for the Victims Fund, but typically directed at limited groups of victims.

13.     But for the Victims Act directing certain proceeds into the Victims Fund, those proceeds would otherwise be available for DOJ to use for its own purposes.

14.     Plaintiffs bring this action because, despite the statutory requirement that funds received from qualifying cases be deposited in the Victims Fund for the benefit of eligible victims, the DOJ has unlawfully refused to direct the deposit of certain qualifying funds—to which Plaintiffs, and thousands of others, have rights as eligible victims under the Victims Act, and depend on those funds—into the Victims Fund.

15.     Relevant here, the DOJ has unlawfully refused to direct for deposit into the Victims Fund proceeds obtained by the United States through the United States' settlement of the case captioned and docketed in this judicial district as *USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH ("*BAT*"). The *BAT* proceeds qualify for deposit into the Victims Fund pursuant to the terms of the Victims Act.

16.     There is no discretion here. Neither the Victims Act nor any other statute vests in the DOJ discretion to decide whether proceeds qualifying for deposit into the Victims Fund should or should not be deposited. The directive of the Victims Act is clear: if a case meets the statutory requirements, all proceeds from that case ***shall*** be deposited into the Victims Fund.

17.    The DOJ's refusal to direct that the *BAT* proceeds be deposited into the Victims Fund is unlawful.

## JURISDICTION AND VENUE

18.    This Court has jurisdiction over this civil action under 28 U.S.C. § 1331 because the action arises under federal law, namely the APA, 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The DOJ's failure to direct the deposit of the *BAT* proceeds into the Victims Fund is action unlawfully withheld and thus final agency action for purposes of judicial review under the APA. *See* 5 U.S.C. §§ 551(13) (defining "agency action" to include the "failure to act") and 706(1) (directing the reviewing court to "compel action unlawfully withheld or unreasonably delayed").

19.    Plaintiffs have no other remedy to exercise their rights with respect to the unlawfully withheld *BAT* proceeds.

20.    Plaintiffs have standing because, as eligible victims under the Victims Act, the DOJ's refusal to direct the deposit of the *BAT* proceeds into the Victims Fund denies Plaintiffs their statutory rights to a percentage of those proceeds.

21.    Through the APA, the United States has waived sovereign immunity from this lawsuit.

22.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the Defendant resides in this judicial district and the actions that are the subject of this Complaint were taken, at least in material part, in this district.

## PARTIES

23.    Plaintiff Joseph Paul Englehardt is a resident of Virginia. Mr. Englehardt is an eligible victim with rights to proceeds required by law to be deposited into the Victims Fund. He

has received payments from one prior distribution, totaling less than one percent of his compensatory damages judgment (0.4%).

24.     Plaintiff Yvonne Dora Wade is a resident of Maryland. Ms. Wade is an eligible victim with rights to proceeds required by law to be deposited into the Victims Fund. She has received payments from one prior distribution, totaling less than one percent of her compensatory damages judgment (0.4%).

25.     Defendant United States Department of Justice is a Department of the United States Government. Its headquarters are located in Washington, D.C.

26.     Defendant Merrick Garland is the Attorney General of the United States and, in that capacity, is the top officer and decision-maker at the Department of Justice. He is sued here in his official capacity.

## GENERAL ALLEGATIONS

## I.     Relief for Victims of Terrorism

27.     Plaintiff Joseph Paul Englehardt was serving in the U.S. armed forces when he was injured in the 1983 bombing of the U.S. Embassy in Beirut, Lebanon. Mr. Englehardt suffered from being struck by shrapnel and glass fragments, many of which could not be surgically removed. Since the bombing, Mr. Englehardt has suffered from flashbacks, sleep disorders, anxiety, and other emotional injuries, in addition to his physical injuries. In 2022, Mr. Englehardt received a judgment against Iran, a designated State Sponsor of Terrorism, for monetary damages for the role that Iran played in orchestrating, funding, and directing the bombing of the embassy through its agents and co-conspirators who were affiliated with the terrorist organization now known as Hezbollah. *See Jones v. Islamic Republic of Iran*, No. 1:20-cv-00850-RC, Dkt. 44 (D.D.C. June 16, 2022) (sealed judgment).

28.     Plaintiff Yvonne Dora Wade was working for the U.S. Embassy when she was injured in the 1984 bombing of the U.S. Embassy Annex in Beirut, Lebanon. Ms. Wade suffered from multiple lacerations to her face, loss of vision in her right eye, severe lacerations on her arm and hand, a severed tendon in her finger, and a ruptured ear drum. She was unable to work for a year following the attack and has continued to suffer from the loss of a significant portion of her vision, loss of hearing, and the tolls of her other physical and emotional injuries. In 2022, Ms. Wade received a judgment against Iran, a designated State Sponsor of Terrorism, for monetary damages for the role that Iran played in supporting the bombing of the embassy annex. *See Jones v. Islamic Republic of Iran*, No. 1:20-cv-00850-RC, Dkt. 44 (D.D.C. June 16, 2022) (sealed judgment).

29.     As former Chief Judge Royce Lamberth wrote regarding plaintiffs who have pursued justice against Iran: "Despite the best intentions of Congress and moral statements of support from the Executive Branch, the stark reality is that the plaintiffs in these actions face continuous road blocks and setbacks in what has been an increasingly futile exercise to hold Iran accountable for unspeakable acts of terrorist violence." *In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 35-36 (D.D.C. 2009).

30.     Congress intended the Victims Act and the Victims Fund it created to bring a measure of justice to the victims of terrorism. Specifically, the Victims Act authorized the DOJ to appoint a special master to administer the Victims Fund and to determine the eligibility of victims of state-sponsored terrorism for payments. Eligible victims are then authorized to submit claims to the Victims Fund, which is capitalized, in part, as follows:

> **(2) Deposit and transfer**
> Beginning on December 18, 2015, the following ***shall be*** deposited or transferred into the Fund for distribution under this section:

**(A) Forfeited funds and property**

**(i) Criminal funds and property**

> *All* funds, and the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a criminal penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related criminal conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.

34 U.S.C. §20144(e) (emphasis added).

31.     The DOJ is charged with directing qualifying funds to be deposited into the Victims Fund; the statute leaves no room for agency discretion.

32.     Notably, were it not for the Victims Act, any such funds obtained by the United States would be directed by the DOJ to other funds and programs administered by the DOJ.

**II.     The British American Tobacco Settlement**

33.     From 1988 to 2008, North Korea was designated as a State Sponsor of Terrorism. On November 20, 2017, the Secretary of State once again designated North Korea as a State Sponsor of Terrorism.

34.     On April 7, 2023, British American Tobacco p.l.c ("BAT") and British-American Tobacco Marketing (Singapore) Private Limited ("BATMS") were charged in a two-count Information with the offenses of Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 1349 ("Count 1"), and Conspiracy to Violate the International Emergency Economic Powers ACT ("IEEPA"), in violation of 50 U.S.C. § 1705 ("Count 2"). *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 1 (D.D.C. Apr. 7, 2023) (the "Information"). The Information also sought the forfeiture of any real or personal property which

constituted or was derived from the proceeds traceable to Counts 1 and 2 and a money judgment for a sum of money equal to the proceeds traceable to the alleged offenses.

35.     BAT, established in 1902, is a multinational entity headquartered in London, United Kingdom, involved in the trade and production of tobacco products around the world. BATMS is an indirect subsidiary of BAT located in Singapore.

36.     The charges against BAT and BATMS arose from a lengthy and complex conspiracy to sell tobacco products to North Korea, "[b]etween at least August 2007 and continuing through at least June 2017[.]" The Information, at 10, 33-37.  In fact, the roots of the conspiracy date back to the early 2000s.  The Information, at 25-27, 64.

37.     On April 25, 2023, BAT entered into a deferred prosecution agreement with the United States. *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 11 (D.D.C. Apr. 25, 2023).

38.     On April 25, 2023, BATMS pled guilty to both counts in the Information and admitted the forfeiture allegations pursuant to an agreement (the "plea agreement") with the Office of the United States Attorney for the District of Columbia and the National Security Division of the DOJ. *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 12 (D.D.C. Apr. 25, 2023).

39.     Through the deferred prosecution agreement and plea agreement, BAT and BATMS agreed to a penalty and fine amount of $440,350,738 (the "Criminal Fines") and the entry of a forfeiture money judgment in the amount of $189,541,115 (the "Criminal Forfeitures"). In total, BAT and BATMS agreed to be jointly and severally liable for a single amount of

$629,891,853.[1] *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 18 (D.D.C. Apr. 27, 2023).

40.    Payment of the Criminal Fines was ordered to be made to the Clerk for the U.S. District Court for the District of Columbia and payment of the Criminal Forfeitures was ordered to be made to the United States Marshals Service. *Id.*

41.    The judgment set the following payment schedule for BAT and BATMS:

| Payable on or before September 30, 2023 | |
| --- | --- |
| Fine | $ 220,175,369.00 |
| Forfeiture | $ 94,770,557.50 |

| Payable on or before June 30, 2024 | |
| --- | --- |
| Fine | $ 220,175,369.00 |
| Forfeiture | $ 94,770,557.50 |

*See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 18-1 (D.D.C. Apr. 27, 2023).

42.    The *BAT* docket shows that on or around September 28, 2023, the amounts due by September 30, 2023 were in fact paid to the United States. *See BAT*, Dkt. 19, at 1 (D.D.C. Sept. 28, 2023).

---

[1] BAT and BATMS also agreed to pay an $800 special assessment within ten business days of the sentencing hearing.

**III.**     **The *BAT* Proceeds Qualify for Deposit into the Victims Fund.**

43.     By its plain terms, the Victims Act requires that the Criminal Fines and Criminal Forfeiture arising from *USA v. British American Tobacco P.L.C* be deposited into the Victims Fund.

44.     At the time that BAT and BATMS were charged—as well as at the time BAT initiated the conspiracy, the time of sentencing, and the time BAT made the payments to the United States—North Korea was a designated State Sponsor of Terrorism.

45.     *BAT Count* I, Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 1349, is a federal offense arising from doing business with or acting on behalf of a State Sponsor of Terrorism. Count I is manifestly an offense set forth in the Victims Act, 34 U.S.C. §20144(e)(2), for which all funds arising from the violation shall be deposited into the Victims Fund.

46.     *BAT* Count II, Conspiracy to Violate the International Emergency Economic Powers ACT, in violation of 50 U.S.C. § 1705, charges an offense specifically listed in the Victims Act, 34 U.S.C. §20144(e)(2), for which all funds arising from the violation shall be deposited into the Victims Fund.

47.     Similarly, the Criminal Forfeitures are proceeds stemming from a violation of the International Emergency Economic Powers Act, 18 U.S.C. § 981(a)(l)(C); 21 U.S.C. § 853(p); and 28 U.S.C.§ 2461. The Criminal Forfeitures thus derive from an offense set forth in the Victims Act, 34 U.S.C. §20144(e)(2), for which all funds arising from the violation shall be deposited into the Victims Fund.

48.     Pursuant to the Victims Act, "***all funds***" paid to the United States as a criminal penalty for conspiracies, schemes, or other offenses "arising from the actions of, or doing business with or acting on behalf of" a state sponsor of terrorism "***shall be*** deposited or transferred into the

Fund." 34 U.S.C. § 20144(e)(2) (emphasis added). From a plain reading of the statute, the *BAT* proceeds must be deposited into the Victims Fund. Congress' use of "shall" leaves DOJ no discretion. *See Maine Community Health Options v. United States*, --- U.S. ---, 140 S. Ct. 1308, 1321 (2020) ("The first sign that the statute imposed an obligation is its mandatory language: 'shall.'").

**IV.     The DOJ Has Failed to Direct the Deposit of the *BAT Proceeds* into the Victims Fund as Required by Law.**

49.     The DOJ, through its Money Laundering and Asset Recovery Section ("MLARS"), is charged with ensuring that qualifying proceeds be directed for deposit into the Victims Fund.

50.     Prosecutors are instructed to consult MLARS as early as possible in a case that involves a State Sponsor of Terrorism so that MLARS can determine whether proceeds from the case qualify for deposit into the Victims Fund.

51.     DOJ unlawfully refused to direct the first tranche of the *BAT* proceeds to be deposited into the Victims Fund despite those proceeds plainly falling within the scope of the Victims Act.

52.     BAT and BATMS were ordered to pay $220,175,369.00 in Criminal Fines and $94,770,557.50 in Criminal Forfeitures on or before September 30, 2023, which is the last day of the 2023 fiscal year. And the *BAT* docket confirms that on or around September 28, 2023, the amounts due by September 30, 2023 were in fact paid to the United States. *See BAT*, Dkt. 19, at 1 (D.D.C. Sept. 28, 2023).

53.      The Victim Fund's website publishes information about qualifying cases and amounts deposited into the Victims Fund.

54.     *USA v. British American Tobacco P.L.C* is not listed with the cases or matters from which deposits into the Victims Fund were received prior to the end of the 2023 fiscal year. *See*

http://www.usvsst.com/deposits.php (*Qualifying Case Deposits in the USVSST Fund*) (last visited Jan. 4, 2024).

55.     The Victim's Fund's website provides that many other cases and matters involving North Korea resulted in deposits into the Victims Fund. Those cases include: *United States v. PT Bukit Muria Jaya*, 21-cr-14 (D.D.C. Jan. 14, 2021) (involving a global supplier of cigarette products transacting with North Korea); *United States v. Essentra FZE Company Limited*, 20-cr-112 (D.D.C. July 15, 2020) (involving a global supplier of cigarette products transacting with North Korea); *United States v. $148,500 of Blocked Funds in the Name of Trans Multi Mechanics, Co. Ltd., et al.*, 16-cv-1029 (D.D.C. June 1, 2016) (involving a Taiwanese company transacting with North Korea).

56.     On December 19, 2023, the Special Master of the Victims Fund issued a statement on the status of the Victims Fund. In that statement, the Special Master reported that the Victims Fund collected $44 million from civil and criminal cases in fiscal year 2023. *See* http://www.usvsst.com/index.php (*A Message from USVSST Fund Special Master Mary Patrice Brown*) (Dec. 19, 2023).

57.     A chart published the same day as the Special Master's statement shows that the Victims Fund received $0.94 million in criminal case deposits and $43.11 million in civil case deposits in fiscal year 2023. *See* http://www.usvsst.com/docs/QualifyingCaseDeposits_By_FY.pdf (*USVSST Fund Qualifying Case Deposits By FY*) (Dec. 19, 2023).

58.     Based upon the reporting from the Victims Fund, the Criminal Fines and Criminal Forfeiture amounts due on or before September 30, 2023, totaling $314,945,926.50, were not deposited into the Victims Fund.

V.    **The DOJ's Unlawful Refusal to Direct the Deposit of the *BAT* Proceeds into the Victims Fund Has Caused and Will Continue to Cause Plaintiffs Injury.**

59.    Plaintiffs have each been determined by the Special Master as meeting the statutory requirements for having claims eligible for the Victims Fund. *See* 34 U.S.C. § 20144(c). Mr. Englehardt was determined to be eligible on September 20, 2022. Ms. Wade was determined to be eligible on September 20, 2022.

60.    The Special Master of the Victims Fund is required to authorize distributions to eligible victims, such as Plaintiffs, when there are sufficient funds available to do so.

61.    By unlawfully refusing to direct the *BAT* proceeds to be deposited into the Victims Fund, the DOJ has injured Plaintiffs by depriving them of the benefit of their right to disbursements of a share of the proceeds they would have received had the *BAT* proceeds been deposited into the Victims Fund and thereafter disbursed by the Special Master as required by law.

62.    Moreover, since the Victims Act requires "all funds" to be deposited, Congress did not authorize the DOJ to determine that only some of the *BAT* proceeds qualify for deposit. Inasmuch as the first tranche of *BAT* proceeds was not deposited into the Victims Fund, it follows that DOJ must have already decided that none of the *BAT* proceeds is to be deposited into the Victims Fund. Per the *BAT* payment schedule, the second payment of the *BAT* proceeds is due to be paid to the U.S. Government on or before June 30, 2024. Thus, the DOJ's decision to withhold *BAT* proceeds from deposit into the Victims Fund will continue to injure Plaintiffs, resulting in a second substantial deprivation of funds otherwise owed and payable to Plaintiffs.

## COUNT I

### (The DOJ Has Unlawfully Refused to Direct, or Alternatively has Unreasonably Delayed Directing, the Deposit of *BAT* Proceeds into the Victims Fund)

63.     Paragraphs 1 – 62 are incorporated by reference.

64.     In failing to direct the deposit of the Criminal Fines and Criminal Forfeitures paid to the United States on or before September 30, 2023, arising from *USA v. British American Tobacco P.L.C*, into the Victims Fund, the DOJ unlawfully withheld an action it was required by law to take. *See* 5 U.S.C. § 706(1).

65.     Alternatively, the DOJ's failure to direct the deposit of the *BAT* proceeds into the Victims Fund to date constitutes an unreasonable delay of an action it is required by law to take. *See* 5 U.S.C. § 706(1).

## COUNT II

### (Declaratory Judgment)

66.     Paragraphs 1 – 65 are incorporated by reference.

67.     The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare Plaintiff's legal rights where an actual controversy exists.

68.     As stated above, an actual controversy exists between Plaintiffs and the DOJ within the jurisdiction of this Court.

69.     For the reasons stated above, Plaintiffs seek a declaration of their rights under the Victims Act, to wit, that all proceeds obtained by the United States in *USA v. British American Tobacco P.L.C* qualify for deposit, and are therefore required to be directed by the DOJ to be deposited, into the Victims Fund.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully ask that the Court:

a.  declare that all proceeds obtained by the United States in *USA v. British American Tobacco P.L.C* qualify for deposit, and are therefore required to be directed by the DOJ to be deposited, into the Victims Fund;

b.  order the DOJ to direct the deposit of the first *BAT* payment (which, per the terms of the *BAT* deferred prosecution agreement and plea agreement, was required to be paid—and, as shown on the *BAT* docket, was in fact paid—to the United States on or before September 30, 2023) into the Victims Fund;

c.  order the DOJ to direct the deposit of the second *BAT* payment (which, per the terms of the *BAT* deferred prosecution agreement and plea agreement, is required to be paid to the United States on or before June 30, 2024) into the Victims Fund;

d.  award Plaintiffs their reasonable attorneys' fees and costs expended herein; and,

e.  grant such additional relief as this Court deems just and proper.

June 27, 2024                                      Respectfully submitted,


                                      /s/ Daniel W. Wolff
                                      Daniel W. Wolff (DC Bar No. 486733)
                                          DWolff@crowell.com
                                      CROWELL & MORING LLP
                                      1001 Pennsylvania Avenue NW
                                      Washington, DC 20004
                                      (202) 624-2500 (phone)
                                      (202) 628-5116 (fax)

                                      *Attorneys for Plaintiffs*