### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------- X

JOSEPH PAUL ENGLEHARDT
315 North Highland Street
Arlington, Virginia 22201;

YVONNE DORA WADE                                 24cv1865
7014 Canyon Drive
Capitol Heights, Maryland 20743;            Case no. 24-cv-1642(APM)

                    *Plaintiffs,*

DIANA CAMPUZANO,
158 West 84th Street
New York, New York 10024;

STUART FORCE,
*Individually and as personal representative of the estate*
*of Taylor Force,*
60 Autumn Oaks Drive,
The Hills, Texas 78738;

BEATRIZ GONZALEZ,
*Individually and as personal representative of the estate*
*of Nohemi Gonzalez,*
207 S. Montana Avenue
Roswell, New Mexico 88203;

MICAH LAKIN AVNI,
*individually and as personal representative of the Estate*
*of Richard Lakin,*
48 Yehuda HaLevi Street
Tel Aviv, 6578202, Israel;

MURRAY BRAUN,
128 North McCadden Place
Los Angeles, CA 90004,

                    *Intervenor-Plaintiffs,*

-against-


UNITED STATES DEPARTMENT OF JUSTICE,

950 Pennsylvania Avenue, NW

Washington, DC 20530-0001;

                    -and-


ATTORNEY GENERAL MERRICK GARLAND,

950 Pennsylvania Ave. NW

Washington, DC 20530,

                                        *Defendants*.

-------------------------------------------------------------------- X


## INTERVENOR COMPLAINT

Intervenor Intervenor-Plaintiffs, by their counsel, complain of the Defendants, and hereby

allege for their Intervenor Complaint as follows:


## INTRODUCTION

1.      This action concerns the United States Victims of State Sponsored Terrorism Act,

34 U.S.C. § 20144 ("USVSST Act" or "Act")

2.      The USVSST Act creates the United States Victims of State Sponsored Terrorism

Fund ("USVSST Fund" or "Fund"), into which funds deriving from criminal forfeitures, civil

penalties, fines, and civil forfeitures, relating to violation of sanctions regulations, as well as an

initial allocation from the Treasury,[1] are deposited. The Fund then distributes these funds *pro rata*

---

[1] The initial allocation corresponded to a portion of the money the Government had received from a large fine paid by Bank Paribus for violating the sanctions regime against Iran.

to victims of state-sponsored terrorism holding qualifying judgments against state sponsors of terrorism.

3.  Intervenor-Plaintiffs bring this action because, despite the statutory requirement that funds received from qualifying cases be deposited in the USVSST Fund for the benefit of eligible victims, the DOJ has unlawfully refused to direct the deposit of certain qualifying funds— to which Intervenor-Plaintiffs, and thousands of others, have rights as eligible victims under the USVSST Act, and depend on those funds—into the USVSST Fund.

4.  The DOJ has unlawfully refused to direct for deposit into the USVSST Fund proceeds obtained by the United States through the United States' settlement of the case captioned and docketed in this judicial district as *USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH ("*BAT*"). The *BAT* proceeds qualify for deposit into the USVSST Fund pursuant to the terms of the USVSST Act.

5.  In this action Intervenor-Plaintiff seeks a mandatory order pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 and a declaratory judgment requiring Defendants to transfer to the USVSST Fund, as required by 34 U.S.C. § 20144(e)(2)(A)(i) and (ii) the approximately $630 million collected as criminal penalties and forfeitures *in U.S.A. v. British-American Tobacco, P.L.C.*

6.  There is no discretion here. Neither the USVSST Act nor any other statute vests in the DOJ discretion to decide whether proceeds qualifying for deposit into the USVSST Fund should or should not be deposited. The directive of the USVSST Act is clear: if a case meets the statutory requirements, all proceeds from that case ***shall*** be deposited into the USVSST Fund.

7.  The DOJ's failure and refusal to direct that the *BAT* proceeds be deposited into the USVSST Fund is unlawful.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this civil action under 28 U.S.C. § 1331 because the action arises under federal law, namely the APA, 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. § 2201. The DOJ's failure to direct the deposit of the *BAT* proceeds into the USVSST Fund is action unlawfully withheld and thus final agency action for purposes of judicial review under the APA. *See* 5 U.S.C. §§ 551(13) (defining "agency action" to include the "failure to act") and 706(1) (directing the reviewing court to "compel action unlawfully withheld or unreasonably delayed").

9.      Intervenor-Plaintiffs have no other remedy to exercise their rights with respect to the unlawfully withheld *BAT* proceeds.

10.     Intervenor-Plaintiffs have standing because, as eligible victims under the USVSST Act, the DOJ's refusal to direct the deposit of the *BAT* proceeds into the USVSST Fund denies Intervenor-Plaintiffs their statutory rights to a percentage of those proceeds.

11.     Through the APA, the United States has waived sovereign immunity from this lawsuit.

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because the Defendants reside in this judicial district and the actions that are the subject of this Complaint were taken, at least in material part, in this district.

## THE PARTIES

13.     Intervenor-Plaintiff Diana Campuzano was a plaintiff in *Campuzano v. Islamic Republic of Iran,* D.D.C. 00-cv-2328 (RDM) and in that action obtained a money judgment including $18,952,725 for compensatory damages against the Islamic Republic of Iran ("Iran"), a

state sponsor of terrorism, as well as an award of punitive damages, such judgment having been entered by this Court (Urbina, *J.*) on September 10, 2003.

14.    Intervenor-Plaintiff Stuart Force, individually and as personal representative of the Estate of Taylor Force, was a plaintiff in *Force v. Islamic Republic of Iran,* D.D.C. 16-cv-1468 (RDM) and in that action obtained a money judgment including $6.25 million for compensatory damages against Iran for Stuart Force individually and $1,584,230 for compensatory damages against Iran for the Estate of Taylor Force, as well as an award of pre-judgment interest and punitive damages, such judgment having been entered by this Court (Moss, *J.*) on August 8, 2022.

15.    Intervenor-Plaintiff Beatriz Gonzalez, individually and as personal representative of the Estate of Nohemi Gonzalez, was a plaintiff in *Cain-Baarbe et al v. The Syrian Arab Republic,* E.D.N.C. 20-cv-00230 (BO) and in that action obtained a money judgment including $7.5 million for compensatory damages against Syria for Beatriz Gonzalez individually and $3,493,216 for compensatory damages against Syria for the Estate of Nohemi Gonzalez, as well as an award of pre-judgment and punitive damages, such judgment having been entered on June 28, 2023.

16.    Intervenor-Plaintiff Micah Lakin Avni, individually and as personal representative of the Estate of Richard Lakin, was a plaintiff in *Force v. Islamic Republic of Iran,* D.D.C. 16-cv-1468 (RDM) and in that action obtained a money judgment including $6.25 million for compensatory damages against Iran for Micah Lakin Avni individually and $1.5 million for compensatory damages against Iran for the Estate of Richard Lakin, as well as an award of pre-judgment interest4 and punitive damages, such judgment having been entered by this Court (Moss, *J.*) on August 8, 2022.

17.    Intervenor-Plaintiff Murray Braun was a plaintiff in *Braun v. Islamic Republic of Iran,* D.D.C. 15-cv-1136 (BAH) and in that action obtained a money judgment including $2.5

million for compensatory damages against the Islamic Republic of Iran ("Iran"), a state sponsor of terrorism, as well as an award of punitive damages, such judgment having been entered by this Court (Howell, *C.J.*) on January 10, 2017.

18.    As victims of terrorism holding judgments for compensatory damages against Iran, Intervenor-Plaintiffs are eligible to receive distributions from the Fund, and in fact Intervenor-Plaintiffs have applied to the Fund for compensation, have been determined by the USVSST Fund to be eligible for distributions.

19.    Defendant Merick Garland is the Attorney General of the United States, and is named as a defendant herein in his official capacity.

20.    Defendant United States Department of Justice ("DOJ") is a department of the government of Defendant USA.

## THE USVSST ACT

21.    Enacted on December 18, 2015, the Act "established in the Treasury a fund to be designated as the United States Victims of State Sponsored Terrorism Fund," 34 U.S.C. § 20144(e)(1), and established funding for it, including an appropriation of $1.025 billion for the Fund in FY 2017. § 20144(e)(5). In addition, the Act mandates that certain forfeiture proceeds, penalties, and fines be deposited by Defendant DOT into the Fund if "forfeited or paid to the United States after the date of [the Act's] enactment." These funds are to come from civil and criminal matters involving prohibited transactions with state sponsors of terrorism. § 20144(e)(2). The Act, as amended, provides that that the Fund will continue operations until 2030, § 20144(e)(6). Thus, the Fund may continue to accumulate and distribute funds over its 15-year life.

22.     While the Fund is "in the Treasury," § 20144(e)(1), it is required to be administered by a special master to be appointed by the Attorney General who is to be compensated from the Fund, § 20144(b)(1)(C), and that special master is authorized to utilize a designated number of Department of Justice personnel, § 20144(b)(1)(B).

23.     The Act provides that after the singular initial allocation made in the first year of the USVSST Fund's existence, the USVSST Fund is funded as follows:

**(2) Deposit and transfer**

Beginning on December 18, 2015, the following shall be deposited or transferred into the Fund for distribution under this section:

**(A) Forfeited funds and property**

**(i) Criminal funds and property**

All funds, and the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a criminal penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related criminal conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.

**(ii) Civil funds and property**

Seventy-five percent[2] of all funds, and seventy-five percent of the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a civil penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.) or the Trading with the Enemy Act (50 U.S.C. App. 1 et seq.), or any related conspiracy, scheme, or other Federal offense arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism.

---

[2] At the time the Act was enacted, this provision said 50%. It was amended in 2019 to say 75%.

**(B) Transfer into Fund of certain assigned assets of Iran and election to participate in Fund**

**(i) Deposit into Fund of assigned proceeds from sale of properties and related assets identified in In Re 650 Fifth Avenue & Related Properties**

**(I) In general**

Except as provided in subclause (II), if the United States receives a final judgment forfeiting the properties and related assets identified in the proceedings captioned as In Re 650 Fifth Avenue & Related Properties, No. 08 Civ. 10934 (S.D.N.Y. filed Dec. 17, 2008), the net proceeds (not including the litigation expenses and sales costs incurred by the United States) resulting from the sale of such properties and related assets by the United States shall be deposited into the Fund.

**(II) Limitation**

The following proceeds resulting from any sale of the properties and related assets identified in subclause (1) shall not be transferred into the Fund:

(aa) The percentage of proceeds attributable to any party identified as a Settling Judgment Creditor in the order dated April 16, 2014, in such proceedings, who does not make an election (described in clause (iii)) to participate in the Fund.

(bb) The percentage of proceeds attributable to the parties identified as the Hegna Judgment Creditors in such proceedings, unless and until a final judgment is entered denying the claims of such creditors.

**(ii) Deposit into Fund of assigned assets identified in Peterson v. Islamic Republic of Iran**

If a final judgment is entered in Peterson v. Islamic Republic of Iran, No. 10 Civ. 4518 (S.D.N.Y.), awarding the assets at issue in that case to the judgment creditors identified in the order dated July 9, 2013, those assets shall be deposited into the Fund, but only to the extent, and in such percentage, that the rights, title, and interest to such assets were assigned through elections made pursuant to clause (iii).

34 U.S.C. § 20144(e)(2).

## BRITISH AMERICAN TOBACCO p.l.c

### A.    Criminal Prosecution of BAT

24.    From 1988 to 2008, North Korea was designated as a State Sponsor of Terrorism. On November 20, 2017, the Secretary of State once again designated North Korea as a State Sponsor of Terrorism.

25.    On April 7, 2023, British American Tobacco p.l.c ("BAT") and British-American Tobacco Marketing (Singapore) Private Limited ("BATMS") were charged in a two-count Information with the offenses of Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 1349 ("Count 1"), and Conspiracy to Violate the International Emergency Economic Powers ACT ("IEEPA"), in violation of 50 U.S.C. § 1705 ("Count 2"). *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 1 (D.D.C. Apr. 7, 2023) (the "Information"). The Information also sought the forfeiture of any real or personal property which constituted or was derived from the proceeds traceable to Counts 1 and 2 and a money judgment for a sum of money equal to the proceeds traceable to the alleged offenses.

26.    BAT, established in 1902, is a multinational entity headquartered in London, United Kingdom, involved in the trade and production of tobacco products around the world. BATMS is an indirect subsidiary of BAT located in Singapore.

27.    The charges against BAT and BATMS arose from a lengthy and complex conspiracy to sell tobacco products to North Korea, "[b]etween at least August 2007 and continuing through at least June 2017[.]" The Information, at 10, 33-37. In fact, the roots of the conspiracy date back to the early 2000s. The Information, at 25-27, 64.

28.     On April 25, 2023, BAT entered into a deferred prosecution agreement with the United States. *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 11 (D.D.C. Apr. 25, 2023).

29.     On April 25, 2023, BATMS pled guilty to both counts in the Information and admitted the forfeiture allegations pursuant to an agreement (the "plea agreement") with the Office of the United States Attorney for the District of Columbia and the National Security Division of the DOJ. *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 12 (D.D.C. Apr. 25, 2023).

30.     Through the deferred prosecution agreement and plea agreement, BAT and BATMS agreed to a penalty and fine amount of $440,350,738 (the "Criminal Fines") and the entry of a forfeiture money judgment in the amount of $189,541,115 (the "Criminal Forfeitures"). In total, BAT and BATMS agreed to be jointly and severally liable for a single amount of $629,891,853.[3] *See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 18 (D.D.C. Apr. 27, 2023).

31.     Payment of the Criminal Fines was ordered to be made to the Clerk for the U.S. District Court for the District of Columbia and payment of the Criminal Forfeitures was ordered to be made to the United States Marshals Service. *Id.*

32.     The judgment set the following payment schedule for BAT and BATMS:

| Payable on or before September 30, 2023 | |
| --- | --- |
| Fine | $ 220,175,369.00 |
| Forfeiture | $ 94,770,557.50 |

_____

[3] BAT and BATMS also agreed to pay an $800 special assessment within ten business days of the sentencing hearing.

| Payable on or before June 30, 2024 | |
|---|---|
| Fine | $ 220,175,369.00 |
| Forfeiture | $ 94,770,557.50 |

*See USA v. British American Tobacco P.L.C. et al*, No. 1:23-cr-00118-BAH, Dkt. 18-1 (D.D.C. Apr. 27, 2023).

33.     The *BAT* docket shows that on or around September 28, 2023, the amounts due by September 30, 2023 were in fact paid to the United States. *See BAT*, Dkt. 19, at 1 (D.D.C. Sept. 28, 2023).

**B.     The *BAT* Proceeds Qualify for Deposit into the USVSST Fund.**

34.     By its plain terms, the USVSST Act requires that the Criminal Fines and Criminal Forfeiture arising from *USA v. British American Tobacco P.L.C* be deposited into the USVSST Fund.

35.     At the time that BAT and BATMS were charged—as well as at the time BAT initiated the conspiracy, the time of sentencing, and the time BAT made the payments to the United States—North Korea was a designated State Sponsor of Terrorism.

36.     *BAT Count* I, Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 1349, is a federal offense arising from doing business with or acting on behalf of a State Sponsor of Terrorism. Count I is manifestly an offense set forth in the USVSST Act, 34 U.S.C. §20144(e)(2), for which all funds arising from the violation shall be deposited into the USVSST Fund.

37. *BAT* Count II, Conspiracy to Violate the International Emergency Economic Powers ACT, in violation of 50 U.S.C. § 1705, charges an offense specifically listed in the USVSST Act, 34 U.S.C. §20144(e)(2), for which all funds arising from the violation shall be deposited into the USVSST Fund.

38. Similarly, the Criminal Forfeitures are proceeds stemming from a violation of the International Emergency Economic Powers Act, 18 U.S.C. § 981(a)(l)(C); 21 U.S.C. § 853(p); and 28 U.S.C.§ 2461. The Criminal Forfeitures thus derive from an offense set forth in the USVSST Act, 34 U.S.C. §20144(e)(2), for which all funds arising from the violation shall be deposited into the USVSST Fund.

39. Pursuant to the USVSST Act, "***all funds***" paid to the United States as a criminal penalty for conspiracies, schemes, or other offenses "arising from the actions of, or doing business with or acting on behalf of" a state sponsor of terrorism "***shall be*** deposited or transferred into the Fund." 34 U.S.C. § 20144(e)(2) (emphasis added). From a plain reading of the statute, the *BAT* proceeds must be deposited into the USVSST Fund. Congress' use of "shall" leaves DOJ no discretion. *See Maine Community Health Options v. United States*, ___ U.S. ___, 140 S. Ct. 1308, 1321 (2020) ("The first sign that the statute imposed an obligation is its mandatory language: 'shall.'").

## C.     The DOJ Has Failed to Direct the Deposit of the *BAT Proceeds* into the USVSST Fund as Required by Law.

40. The DOJ, through its Money Laundering and Asset Recovery Section ("MLARS"), is charged with ensuring that qualifying proceeds be directed for deposit into the USVSST Fund.

41. Prosecutors are instructed to consult MLARS as early as possible in a case that involves a State Sponsor of Terrorism so that MLARS can determine whether proceeds from the case qualify for deposit into the USVSST Fund.

42.     DOJ unlawfully refused to direct the first tranche of the *BAT* proceeds to be deposited into the USVSST Fund despite those proceeds plainly falling within the scope of the USVSST Act.

43.     BAT and BATMS were ordered to pay $220,175,369.00 in Criminal Fines and $94,770,557.50 in Criminal Forfeitures on or before September 30, 2023, which is the last day of the 2023 fiscal year. And the *BAT* docket confirms that on or around September 28, 2023, the amounts due by September 30, 2023 were in fact paid to the United States. *See BAT*, Dkt. 19, at 1 (D.D.C. Sept. 28, 2023).

44.     The Victim Fund's website publishes information about qualifying cases and amounts deposited into the USVSST Fund.

45.     *USA v. British American Tobacco P.L.C* is not listed with the cases or matters from which deposits into the USVSST Fund were received prior to the end of the 2023 fiscal year. *See* http://www.usvsst.com/deposits.php (*Qualifying Case Deposits in the USVSST Fund*) (last visited Jan. 4, 2024).

46.     The Victim's Fund's website provides that many other cases and matters involving North Korea resulted in deposits into the USVSST Fund. Those cases include: *United States v. PT Bukit Muria Jaya*, 21-cr-14 (D.D.C. Jan. 14, 2021) (involving a global supplier of cigarette products transacting with North Korea); *United States v. Essentra FZE Company Limited*, 20-cr-112 (D.D.C. July 15, 2020) (involving a global supplier of cigarette products transacting with North Korea); *United States v. $148,500 of Blocked Funds in the Name of Trans Multi Mechanics, Co. Ltd., et al.*, 16-cv-1029 (D.D.C. June 1, 2016) (involving a Taiwanese company transacting with North Korea).

47.     On December 19, 2023, the Special Master of the USVSST Fund issued a statement on the status of the USVSST Fund. In that statement, the Special Master reported that the USVSST

Fund collected $44 million from civil and criminal cases in fiscal year 2023. *See* http://www.usvsst.com/index.php (*A Message from USVSST Fund Special Master Mary Patrice Brown*) (Dec. 19, 2023).

48.    A chart published the same day as the Special Master's statement shows that the USVSST Fund received $0.94 million in criminal case deposits and $43.11 million in civil case deposits in fiscal year 2023. *See* http://www.usvsst.com/docs/QualifyingCaseDeposits_By_FY. pdf (*USVSST Fund Qualifying Case Deposits By FY*) (Dec. 19, 2023).

49.    Based upon the reporting from the USVSST Fund, the Criminal Fines and Criminal Forfeiture amounts due on or before September 30, 2023, totaling $314,945,926.50, were not deposited into the USVSST Fund.

**C.    The DOJ's Unlawful Refusal to Direct the Deposit of the *BAT* Proceeds into the USVSST Fund Has Caused and Will Continue to Cause Intervenor-Plaintiffs Injury.**

50.    Intervenor-Plaintiffs have each been determined by the Special Master as meeting the statutory requirements for having claims eligible for the USVSST Fund. *See* 34 U.S.C. § 20144(c).

51.    The Special Master of the USVSST Fund is required to authorize distributions to eligible victims, such as Intervenor-Plaintiffs, when there are sufficient funds available to do so.

52.    By unlawfully refusing to direct the *BAT* proceeds to be deposited into the USVSST Fund, the DOJ has injured Intervenor-Plaintiffs by depriving them of the benefit of their right to disbursements of a share of the proceeds they would have received had the *BAT* proceeds been deposited into the USVSST Fund and thereafter disbursed by the Special Master as required by law.

53.     Moreover, since the USVSST Act requires "all funds" to be deposited, Congress did not authorize the DOJ to determine that only some of the *BAT* proceeds qualify for deposit. Inasmuch as the first tranche of *BAT* proceeds was not deposited into the USVSST Fund, it follows that DOJ must have already decided that none of the *BAT* proceeds is to be deposited into the USVSST Fund. Per the *BAT* payment schedule, the second payment of the *BAT* proceeds is due to be paid to the U.S. Government on or before June 30, 2024. Thus, the DOJ's decision to withhold *BAT* proceeds from deposit into the USVSST Fund will continue to injure Intervenor-Plaintiffs, resulting in a second substantial deprivation of funds otherwise owed and payable to Intervenor-Plaintiffs.

### FIRST CLAIM FOR RELIEF
**(Administrative Procedure Act - The DOJ Has Unlawfully Refused to Direct, or Alternatively has Unreasonably Delayed Directing, the Deposit of *BAT* Proceeds into the USVSST Fund)**

54.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

55.     In failing to direct the deposit of the Criminal Fines and Criminal Forfeitures paid to the United States on or before September 30, 2023, arising from *USA v. British American Tobacco P.L.C*, into the USVSST Fund, the DOJ unlawfully withheld an action it was required by law to take. *See* 5 U.S.C. § 706(1).

56.     Alternatively, the DOJ's failure to direct the deposit of the *BAT* proceeds into the USVSST Fund to date constitutes an unreasonable delay of an action it is required by law to take. *See* 5 U.S.C. § 706(1).

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment)**

57.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

58.     The Declaratory Judgment Act, 28 U.S.C. § 2201, grants this Court authority to declare Intervenor-Plaintiff's legal rights where an actual controversy exists.

59.     As stated above, an actual controversy exists between Intervenor-Plaintiffs and the DOJ within the jurisdiction of this Court.

60.     For the reasons stated above, Intervenor-Plaintiffs seek a declaration of their rights under the USVSST Act, to wit, that all proceeds obtained by the United States in *USA v. British American Tobacco P.L.C* qualify for deposit, and are therefore required to be directed by the DOJ to be deposited, into the USVSST Fund.

**JURY DEMAND**

Intervenor-Plaintiffs demand trial by jury of all issues legally triable to a jury.

**PRAYER FOR RELIEF**

**WHEREFORE**, Intervenor-Plaintiffs demand judgment:

a)     DECLARING that all proceeds obtained by the United States in *USA v. British American Tobacco P.L.C* qualify for deposit, and are therefore required to be directed by the DOJ to be deposited, into the USVSST Fund;

b)     ORDERING the DOJ to direct the deposit of the first *BAT* payment (which, per the terms of the *BAT* deferred prosecution agreement and plea agreement, was required to be paid— and, as shown on the *BAT* docket, was in fact paid—to the United States on or before September 30, 2023) into the USVSST Fund;

c)    ORDERING the DOJ to direct the deposit of the second *BAT* payment (which, per the terms of the *BAT* deferred prosecution agreement and plea agreement, is required to be paid to the United States on or before June 30, 2024) into the USVSST Fund;

d)    AWARDING Intervenor Intervenor-Plaintiffs their reasonable attorneys' fees and costs expended herein; and,

e)    GRANTING such additional relief as is just and proper under the circumstances.

Dated:  July 17, 2024
      Brooklyn, New York

          Respectfully submitted,

          THE BERKMAN LAW OFFICE, LLC
          *Attorneys for Intervenor-Plaintiffs*

          By:_____
              Robert J. Tolchin
              (D.C. Bar #NY0088)

          829 East 15th Street, Box 7
          Brooklyn, New York 11230
          (718) 855-3627
          rtolchin@berkmanlaw.com