UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH PAUL ENGLEHARDT, et al., | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )     Case No. 24-cv-1865 (APM) <br> ) |
| MERRICK B. GARLAND, et al., | ) <br> ) |
| Defendants. | ) <br> ) |

## MEMORANDUM OPINION

### I.

This case poses a familiar problem: Does a phrase at the end of a list modify all items in that list, or only the final one? The phrase in question appears in the Justice for United States Victims of State Sponsored Terrorism Act, by which Congress established a fund to compensate victims of state-sponsored terrorism ("Victims Fund"). 34 U.S.C. § 20144(e). The Victims Fund draws on three sources of funding: (1) an initial appropriation of $1.025 billion; (2) penalties, fines, and forfeitures arising from sanctions violations and related offenses; and (3) certain assets of Iran. *Id.* § 20144(e)(2), (e)(5). The instant dispute concerns the scope of the second source—specifically, whether all of the offenses listed in § 20144(e)(2)(A)(i) must "aris[e] from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism," or only the offense immediately preceding that phrase. For the reasons set forth below, the court holds that the modifying phrase applies to all five specified offenses and therefore grants Defendants' Cross-Motion for Summary Judgment and denies Plaintiffs' Motion for Summary Judgment.

II.

Plaintiffs Joseph Englehardt and Yvonne Wade were injured in the early 1980s by terrorist attacks in Beirut, Lebanon, both of which were sponsored by Iran. After Congress amended the Foreign Sovereign Immunities Act in 1996 to authorize suits for money damages against state sponsors of terrorism, *see* 28 U.S.C. § 1605A, Plaintiffs obtained judgments against Iran in 2022, which made them eligible to receive compensation from the Victims Fund. Plaintiffs then filed this action for declaratory and injunctive relief, alleging that Defendants U.S. Department of Justice and U.S. Attorney General Merrick Garland had unlawfully withheld approximately $653 million from the Fund. *See* Compl., ECF No. 1 [hereinafter Compl.].[1]

The funds at issue comprise criminal penalties, fines, and forfeitures imposed on two companies in connection with a scheme to sell tobacco products to North Korea, in violation of various sanctions regimes that prohibited U.S. banks from doing business with North Korea. AR132 (Information); AR173 (Deferred Prosecution Agreement); AR235 (Plea Agreement).[2] The two companies—British American Tobacco P.L.C. ("BAT") and its subsidiary, British American Tobacco Marketing (Singapore) Private Limited ("BATMS")—were charged with (1) conspiracy to commit bank fraud between August 2007 and June 2017 and (2) conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") between August 2009 and June 2017. AR132. In short, the companies took steps to conceal their interest in a joint venture company

---

[1] Plaintiffs assert, in the alternative, that Defendants' unreasonable delay in depositing the funds at issue violates the Administrative Procedure Act. Compl. ¶ 65. On August 16, 2024, after Plaintiffs had filed their motion for summary judgment, the U.S. Department of Justice made its determination as to what portion of those funds qualified for deposit into the Victims Fund. *See* Defs.' Combined Mem. in Supp. of Defs.' Cross-Mot. and Opp'n to Pls.' Mot., ECF No. 20-1, at 10–11 (describing the Department's determination and stating that "the parties conferred, and both sides agreed that no alteration to the agreed motion briefing schedule was necessary"). Because the Department has now acted, Plaintiffs' unreasonable-delay claim is moot. *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1205 (D.C. Cir. 2013).

[2] "AR" citations refer to the administrative record, ECF No. 19-2.

located in North Korea, which enabled them to route transactions involving North Korean entities through U.S. banks.

On April 25, 2023, BAT entered into a deferred prosecution agreement, while BATMS pleaded guilty to both charges. AR173; AR235. As part of those dispositions, the companies agreed to pay nearly $630 million, plus interest, in criminal penalties, fines, and forfeitures, which they paid in two tranches: the first in September 2023 and the second in June 2024 (the "*BAT* recovery"). AR266 (Second Amended Judgment); AR278 (Sept. 2023 Stipulation); AR280 (June 2024 Stipulation). On August 16, 2024, the U.S. Department of Justice determined how much of that sum would be deposited into the Victims Fund. AR321 (Decision Memorandum). It concluded that, because North Korea was designated a state sponsor of terrorism for only part of the companies' bank-fraud conspiracy (from August 2007 to October 2008),[3] only a portion of the *BAT* recovery ($10,926,712) qualified for deposit into the Victims Fund. *Id.*

Plaintiffs challenge that decision under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act. In their view, the Justice for United States Victims of State Sponsored Terrorism Act, 34 U.S.C. § 20144, mandates that the entire *BAT* recovery be deposited into the Victims Fund, and thus the Department's apportionment of those funds was unlawful. Both sides now move for summary judgment. Pls.' Mot. for Summ. J., ECF No. 17 [hereinafter Pls.' Mot.]; Defs.' Cross-Mot. for Summ. J., ECF No. 20 [hereinafter Defs.' Cross-Mot.].

## III.

When evaluating cross-motions for summary judgment under the APA, "the Rule 56 standard does not apply." *Dakota Res. Council v. U.S. Dep't of Interior*, No. 22-cv-1853 (CRC),

---

[3] North Korea was redesignated a state sponsor of terrorism in November 2017, after the companies' conspiracies had ended. AR324; *accord State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism (last visited Dec. 12, 2024).

2024 WL 1239698, at *5 (D.D.C. Mar. 22, 2024) (citation omitted). Instead, "the district judge sits as an appellate tribunal," and "[t]he entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotation marks and citation omitted). Judicial review is therefore limited to "deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Ipsen Biopharmaceuticals, Inc. v. Becerra*, 678 F. Supp. 3d 20, 29 (D.D.C. 2023) (internal quotation marks and citation omitted), *aff'd*, 108 F.4th 836 (D.C. Cir. 2024).

The controlling legal standard in this case is § 706(1) of the APA, which states in relevant part that a "reviewing court shall compel agency action unlawfully withheld." 5 U.S.C. § 706(1); *see* Compl. ¶ 64. Under that section, "the only action a court may compel an agency to take" is "discrete action that the agency has a duty to perform." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018). The agency's duty, moreover, "must be 'ministerial or nondiscretionary' and must amount to 'a specific, unequivocal command.'" *Id.* (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)).

## IV.

### A.

Section 20144(e)(2)(A)(i) of the Justice for United States Victims of State Sponsored Terrorism Act directs that "the following shall be deposited or transferred into the [Victims] Fund":

> All funds, and the net proceeds from the sale of property, forfeited or paid to the United States after December 18, 2015, as a criminal penalty or fine arising from a violation of any license, order, regulation, or prohibition issued under the International Emergency Economic Powers Act or the Trading with the Enemy Act, or any related criminal conspiracy, scheme, or other Federal offense *arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism*.

4

34 U.S.C. § 20144(e)(2)(A)(i) (emphasis added) (internal citations omitted).  All parties agree that the two offenses committed here—conspiracy to commit bank fraud and conspiracy to violate IEEPA—fall within the scope of this section.  Thus, the sole question before this court is whether the italicized phrase modifies those offenses.  The answer depends on how far that phrase extends.

As in most statutory-interpretation cases, the parties enlist dueling canons of construction.  Plaintiffs advocate for the last-antecedent rule, which instructs that "a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 577 U.S. 347, 351 (2016) (alteration and citation omitted); *see* Mem. in Supp. of Pls.' Mot., ECF No. 17-1 [hereinafter Pls.' Mem.], at 16.  Applying that rule here, the phrase in question modifies "other Federal offense" and nothing else.  Consequently, because the *BAT* recovery arose from an IEEPA violation and a related criminal conspiracy, it matters not whether those offenses involved a state sponsor of terrorism (North Korea).  The statute, Plaintiffs say, simply requires that the *BAT* recovery be deposited into the Victims Fund in full.

Defendants, by contrast, favor the last-antecedent rule's longstanding rival—the series-qualifier canon.  According to that canon, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 402 (2021) (internal quotation marks and citation omitted); *see* Defs.' Combined Mem. in Supp. of Defs.' Cross-Mot. and Opp'n to Pls.' Mot., ECF No. 20-1 [hereinafter Defs.' Mem.], at 17.  Defendants assert that the relevant series encompasses all five of the offenses identified in § 20144(e)(2)(A)(i)—meaning all five must "arise[] from the actions of, or doing business with or acting on behalf of, a state sponsor of

terrorism" to trigger payment into the Victims Fund.[4]  Thus, it is not enough that the *BAT* defendants conspired to commit bank fraud; for purposes of § 20144(e)(2)(A)(i), only the penalties that arose from that conspiracy while North Korea was designated a state sponsor of terrorism must be deposited.  Similarly, because North Korea's designation was rescinded before the companies' conspiracy to violate IEEPA had commenced, none of the penalties arising from that conspiracy qualify for deposit.

So how is a court to choose between these two canons?  The Supreme Court has offered the following guidance: When "interpret[ing] statutes that include a list of terms or phrases followed by a limiting clause," courts should "typically" apply the last-antecedent rule.  *Lockhart*, 577 U.S. at 351.  That rule, however, is "context dependent," *Facebook*, 592 U.S. at 404, and "as with any canon of statutory interpretation," it "can assuredly be overcome by other indicia of meaning," *Lockhart*, 577 U.S. at 352 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003)).  Accordingly, the Supreme Court has declined to apply it where the limiting clause "appears after an integrated list," *Facebook*, 592 U.S. at 404 (citing *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 344 n.4 (2005)), or "is applicable as much to the first and other words as to the last," *Paroline v. United States*, 572 U.S. 434, 447 (2014) (quoting *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920)).

Such is the case here.  "[T]he modifier at issue immediately follows a concise, integrated clause": "any related criminal conspiracy, scheme, or other Federal offense."  *Facebook*, 592 U.S. at 403.  That clause "hangs together as a unified whole, referring to a single" category of offenses: those "related" to a violation of the named statutes (IEEPA and the Trading with the Enemy Act).

---

[4] Section 20144(e)(2)(A)(i) specifies two sets of offenses encompassing five offenses in total: (1) a violation of (i) IEEPA or (ii) the Trading with the Enemy Act, and (2) any related (iii) criminal conspiracy, (iv) scheme, or (v) other Federal offense.

6

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 440 (2018). Indeed, Plaintiffs themselves acknowledge that "conspiracy," "scheme," and "other Federal offense" constitute a series qualified by "related." *See* Pls.' Combined Reply in Supp. of Pls.' Mot. and Mem. in Opp'n to Defs.' Cross-Mot., ECF No. 22 [hereinafter Pls.' Reply], at 11 ("All parties agree that 'related' qualifies the series consisting of 'conspiracy,' 'scheme,' or 'other Federal offense.'"). It would therefore make little sense to apply the immediately preceding term ("related") to the entire series, but not the phrase that immediately follows ("arising from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism"). As the Supreme Court has long held, the last-antecedent rule does not require accepting such "unlikely premises." *Paroline*, 572 U.S. at 447 (quoting *United States v. Hayes*, 555 U.S. 415, 425 (2009)).

The question then becomes whether the qualifying phrase modifies not only the "related" offenses ("conspiracy," "scheme," or "other Federal offense"), but the foregoing statutory violations as well. In other words, are the statutory violations and related offenses part of the same "integrated list"? *Facebook*, 592 U.S. at 404. The court concludes that they are for two reasons.

*First*, the internal logic and structure of the provision supports such a reading. Section 20144(e)(2)(A)(i) sources funding from criminal penalties, fines, and forfeitures arising from two sets of offenses: (1) a violation of IEEPA or the Trading with the Enemy Act, and (2) any related criminal conspiracy, scheme, or other Federal offense. Thus, both sets of offenses perform the same function in the statutory scheme: triggering § 20144(e)(2)(A)(i)'s deposit mandate. The second set, moreover, would make no sense standing alone. As the plain language of the statute indicates, not just any "conspiracy," "scheme," or "other Federal offense" earmarks funds for deposit into the Victims Fund—only those "related" to the preceding violations. The term "related" therefore links the second set with the first.

*Second*, there is no discernable reason why Congress would require a nexus to state sponsors of terrorism for the related offenses, but not for the statutory violations to which those offenses relate. Not even Plaintiffs defend this distinction. *See* Pls.' Reply at 11 ("As for DOJ's contention . . . that it would be arbitrary for the [modifying phrase] . . . to apply to 'criminal conspiracy,' 'scheme,' or 'other Federal offense,' but not to violations of IEEPA or TWEA, that is not what Plaintiffs contend. Per the last antecedent rule, as Plaintiffs have explained, the [modifying phrase] only applies to 'other Federal offense.'"). Such a "contextually implausible outcome" counsels against interpreting the statute in this manner. *Facebook*, 592 U.S. at 406–07; *cf. United States v. Bass*, 404 U.S. 336, 341 (1971) (applying the series-qualifier canon where "there is no reason consistent with any discernable purpose of the statute to apply" the qualifying phrase to the last antecedent alone).

To be sure, § 20144(e)(2)(A)(i) is no model of clarity. Plaintiffs point out that Congress could have included a comma separating the modifying phrase from its antecedents, which would "suggest[] that Congress intended the phrase . . . to apply equally to [all] preceding elements." *Facebook*, 592 U.S. at 404. But the absence of a single comma is hardly "fatal" to Defendants' argument, as Plaintiffs contend. Pls.' Reply at 11. Because "use of such commas is discretionary," the Supreme Court has declined to "attach significance to an omitted comma" when construing a similar provision. *Bass*, 404 U.S. at 339–40, 340 n.6. This court follows suit.

The court therefore agrees with Defendants' construction of § 20144(e)(2)(A)(i). To trigger payment into the Victims Fund, the criminal penalty, fine, or forfeiture must arise from an enumerated offense, and that offense, in turn, must "aris[e] from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism."

8

**B.**

Having determined the reach of the modifying phrase, the court must now decide the time to which "state sponsor of terrorism" refers. In Plaintiffs' view, even if the offenses listed in § 20144(e)(2)(A)(i) must involve a state sponsor of terrorism, the *BAT* recovery still must be deposited in full because North Korea was so designated at the time the penalties, fines, and forfeitures comprising those funds were paid. Pls.' Mem. at 13–14. Defendants, for their part, argue that the country in question must have been designated a state sponsor of terrorism at the time the conduct giving rise to the qualifying offense occurred—*i.e.*, when the country itself took "action[]," or the defendant in the federal enforcement action "d[id] business with" or "act[ed] on behalf of" that country. 34 U.S.C. § 20144(e)(2)(A)(i); Defs.' Mem. at 21–25. If, as in this case, the period of designation is not coterminous with the defendant's unlawful conduct, only those funds arising from the defendant's unlawful conduct during the period of designation must be deposited into the Victims Fund.

Here again, the statutory text and context support Defendants' reading. "State sponsor of terrorism" is a designation given to countries that have repeatedly provided support for acts of international terrorism. *See* 34 U.S.C. § 20144(j)(7) (defining "state sponsor of terrorism"); *accord* AR324 (citing *State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism). And as North Korea's history shows, the designation is not permanent; it may be rescinded and even reinstated years later. It is, however, binary—a country is either designated or it's not at any given time. Against this backdrop, it would make little sense to say that an offense "aris[es] from the actions of, or doing business with or acting on behalf of, a state sponsor of terrorism" when the country in question no longer holds that title.

9

What's more, Defendants' interpretation is fully consistent with Congress's inclusion of specific temporal language in the statutory provision defining eligible claims.  Pursuant to that provision, an individual is eligible for compensation if (among other requirements) they hold "a final judgment issued . . . against a foreign state that was designated as a state sponsor of terrorism at the time the acts [of international terrorism] occurred or was so designated as a result of such acts[.]"  34 U.S.C. § 20144(c)(2)(A)(i).  Had that provision simply said "a final judgment issued against a state sponsor of terrorism," its natural reading would require that the defendant country be designated a state sponsor of terrorism at the time the final judgment was issued.  To overcome this reading, Congress explicitly identified the relevant time of designation.  Because Congress did not do so in § 20144(e)(2)(A)(i), the natural reading of that section governs—the country involved in the enumerated offense must have been designated a state sponsor of terrorism when the conduct giving rise to that offense occurred.

Lest any doubt remain, consider the peculiar results Plaintiffs' interpretation (tying "state sponsor of terrorism" to "the time of payment") would produce.  Pls.' Mem. at 13.  Had North Korea's designation been rescinded after the companies' unlawful conduct had ended, but before the associated penalties had been paid, *none* of the proceeds from those penalties would be subject to § 20144(e)(2)(A)(i)'s deposit mandate—even though all parties agree that said penalties arose from a qualifying offense, and that offense arose from doing business with a then-designated state sponsor of terrorism.  To take another example, suppose North Korea had never been redesignated a state sponsor of terrorism.  As before, *none* of the funds at issue in this case would be deposited into the Victims Fund—even though some of those funds indisputably arose from crimes committed while North Korea *was* designated.  This court is hard-pressed to believe that Congress intended to subject the Victims Fund to such quirks of timing.  On the contrary, it seems much

more plausible that Congress intended (at minimum) to compensate victims of state-sponsored terrorism with funds derived from the actions of state sponsors of terrorism. Defendants' interpretation accounts for this scenario; Plaintiffs' does not.[5]

## V.

In conclusion, the U.S. Department of Justice did not unlawfully withhold proceeds from the *BAT* recovery from the Victims Fund under 34 U.S.C. § 20144(e)(2)(A)(i). Plaintiffs' APA claim therefore fails, and with it, their overlapping claim for declaratory judgment. *See Clevinger v. Advoc. Holdings, Inc.*, No. 23-cv-1159 (JMC), 2024 WL 3359508, at *14 (D.D.C. July 10, 2024) ("[R]equests for declaratory relief may be dismissed 'when those claims are duplicative or redundant of other claims[.]'" (quoting *Morinville v. U.S. Patent & Trademark Off.*, 442 F. Supp. 3d 286, 296 (D.D.C. 2020))).

Accordingly, the court denies Plaintiffs' Motion for Summary Judgment, ECF No. 17, and grants Defendants' Cross-Motion for Summary Judgment, ECF No. 20, as to Plaintiffs' claims.

Dated: December 16, 2024

Amit P. Mehta
United States District Judge

---

[5] In their reply brief, Plaintiffs appear to suggest that "state sponsor of terrorism" instead refers to the time the unlawful conduct commenced. *See* Pls.' Reply at 4 (the conspiracy was "entered into with a then-designated State Sponsor of Terrorism"); *id.* at 16 (the conspiracy was "formed by BAT in 2007—*i.e.*, when North Korea was a designated State Sponsor of Terrorism"). But Plaintiffs cite no authority to support that interpretation, and it clearly lacks a textual basis. Thus, it cannot overcome the natural reading of the statute.